SOL LUIS DESCARTES, TREASURER OF PUERTO RICO, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; CERVECERÍA INDIA, INC., Intervener.

No. 236.  Argued April 3, 1950.—Decided June 5, 1950.

*Vicente Géigel Polanco, Attorney General,* and *Manuel J. Medina Aymat, Assistant Attorney General,* for petitioner.  *J. Alemañy Sosa* for intervener.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

The intervener herein filed a complaint in the Tax Court requesting the return of $19.51 which it paid under protest, in excise taxes, on an electric drill imported from the United States, valued at $98.50, for use in the repair shop of its industrial plant, based on the fact that it constituted machinery essential for the operation of its industrial plants in the factory stage. The Treasurer, petitioner herein, opposed the taxpayer's claims alleging that the afore-mentioned electric drill was not essential for the establishment and operation of the intervener's industrial plants, and that therefore it was not covered by the exemption provided by § 16–B of the Internal Revenue Act, as amended by Act No. 436 of May 14, 1947.

The Tax Court granted the request, considering that, according to the evidence, the drill was "an essential part in the plaintiff's repair shop, necessary to keep its factory running and properly established, that is, its establishment, in its factory stage". The facts it found proved and on which it based the afore-mentioned conclusion, are the following, as summarized by the lower court itself:

"The drill is installed and in operation in the repair shop of plaintiff's industrial establishment, which is located in the city of Mayagüez, and is engaged in the manufacture and sale of beer, malt, and soft drinks.

"José Cestero, Jr., a mechanical engineer practicing his profession for twelve years, has been chief engineer of the plaintiff's beer factory for not less than three years. He is in charge of all the machinery utilized in the manufacture and bottling of the products of the establishment; and it is his duty to keep it in good operating condition.

"For such purpose, and since the shops in the town of Mayagüez were not able to give the service demanded by its concern with the efficiency and promptness required in the business, the Cervecería India, Inc. built its own mechanical shop, in which, under his direction, lathes, drills, a welding machine, a hydraulic

press, a screw-cutting machine and tools, are utilized in the repairs of its manufacturing and bottling equipment.

"The drill involved in this complaint is turned by an electric motor and it is provided with an adaptor in which drills are inserted which are used for perforating spare parts and tools used in the factory, and to drill pipe flanges. The drill has also been used to remove screws whose heads have been broken; as well as in miscellaneous useful works to make all kinds of repairs while the factory is in operation, or otherwise—its use depending on the emergency repairs which have to be made.

"Before the purchase of the drill, that is, until August 1947, the concern had to resort to the shops in Mayagüez. The new drill, valued at $98.50, is used to make repairs in the plaintiff's machinery, apparatus and tools, exclusively."

To review the order granting the complaint, we issued the writ of certiorari.

The petitioner maintains that the lower court committed an error of law in applying the aforesaid § 16–B of the Internal Revenue Act, since the electric drill in question is not part of "the machinery of the factory stage of production of the intervener's industrial process." We believe he is correct.

Section 16–B of the Internal Revenue Act of Puerto Rico, as amended by Act No. 436 of May 14, 1947 [1] limited, by its third proviso, the scope of the exemption which had been established by the aforesaid § 16–B prior to said amendment. The latter, in its original text, insofar as pertinent provided: "There shall be exempt from the payment of the

---

[1] Said Section provides:

"Section 16–B.—There shall be exempt from the payment of the excises imposed by this Act all apparatus, machinery, or equipment that may be essential for the establishment and operation of industrial plants; *Provided*, That there shall be considered covered by this exemption the sub-units or major features of the said apparatuses, equipment, or machinery that may be necessary to replace other sub-units or to enlarge or improve the equipment, but there shall not be included the spare parts, parts, or accessories of the machinery or of the sub-unit whose 'cost in Puerto Rico' per individual unit may be less than twenty (20) dollars; *Provided, likewise,* That there shall be understood by sub-unit or major

482

excises imposed by this Act all machinery, apparatus, or equipment that may be essential for the establishment and operation of industrial plants . . ." The third "Provided" of said § 16–B, according to the afore-mentioned amendment says: "*Provided, finally, That this being an exemption which covers the essential machinery for the establishment and operation of industrial plants, it shall be construed as applicable only to the machinery of the factory stage of production of the industrial process, having to do with raw materials from the beginning of the manufacturing process until completion thereof*, including packing and labeling of the product; but it shall not cover the machinery, apparatuses, equipment, or vehicles used in the administrative or commercial stage of the industry." (Italics ours.) It is obvious, then, that the legislative purpose was to restrict the exemption granted under § 16–B prior to the amendment of May 14, 1947 [2] only to the *machinery of the factory stage of production of the industrial process* itself, which would necessarily have to do with the conversion of raw materials from the beginning of the manufacturing process until its completion. Any other machinery which does not have to do with the conversion of raw materials from the beginning of the manufacturing process until its completion does not come under the exemption, according to the afore-mentioned amendment.

feature the substantial sections, parts, or accessories of the essential machinery or equipment; Provided, finally, That this being an exemption which covers the essential machinery for the establishment and operation of industrial plants, it shall be construed as applicable only to the machinery of the factory stage of production of the industrial process, having to do with raw materials from the beginning of the manufacturing process until completion thereof, including packing and labeling of the product; but it shall not cover the machinery, apparatuses, equipment, or vehicles used in the administrative or commercial stage of the industry; Provided, however, That there shall be covered by the same exemption any machinery or equipment installed in the manufacturing plant for the health of the workers or for the prevention of accidents

[2] The amendment of May 7, 1949—Act No. 195—though it would not change the result, is not applicable to this case.

■■ In the present case we are dealing with an electric drill, which, according to the evidence, is part of a mechanical shop which is used to repair the intervener's machinery or equipment in its industrial plants, but which is not a part, however, of the machinery that necessarily has to do with the raw material itself from the beginning of the manufacturing process until its completion. And since we are concerned with a statute granting tax exemption, it should be strictly construed. *National Hats Co.* v. *Sancho, Treas.*, 65 P.R.R. 226; *Buscaglia, Treas.* v. *Tax Court*, 68 P.R.R. 34; *Central Coloso* v. *Tax Court*, 70 P.R.R. 62; *Descartes, Treas.* v. *Tax Court, ante*, p. 440. This being so, we must conclude that the lower court erred, based on the facts which it considered proved and as to which there is no controversy, in granting the intervener's complaint.

The order will be reversed and another rendered dismissing the complaint.